IN THE
**UNITED STATES DISTRICT COURT**
FOR
**THE DISTRICT OF MARYLAND**

Kathryn Hart, *et al.*

    Plaintiffs

vs.                                                      Civil Action No.: 1:23-cv-03499-JJR

Willie Edward Taylor Carver, Jr.

    Defendant

**--o0o-**

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs respond to the Motion to Dismiss filed by the Defendant, Willie Edward Carver, Jr. The motion to dismiss should be denied. Plaintiffs incorporate their Motion to Strike.

## I. INTRODUCTION

The motion to dismiss raises two basic arguments. First, Defendant contends that he lacks the minimum contacts required under a constitutional analysis of due process to assert personal jurisdiction in the Maryland Federal Court. Second, Defendant contends that accusing a mother of five young children of adultery and lesbian threesomes is not defamatory, or an invasion of Plaintiffs' privacy, as a matter of law. This response will address the jurisdictional issue first and then address the substantive law questions.

## II. PERSONAL JURISDICTION

Defendant's motion based on personal jurisdiction lacks merit for several reasons.

    A. <u>The Defendant Waived any Objection to Personal Jurisdiction</u>.

First, Defendant waived any objection to personal jurisdiction by filing what amounts to a Motion for Summary Judgment. *Corl v. Kenan Advantage Group Inc.*, No. 3:20-CV-00503,

2022 WL 2232195, at *6 (M.D. Tenn. June 21, 2022) (by asserting a 12(b)(2) motion to dismiss, which became a summary judgment, and seeking a decision on the merits, the defendant waives its objection to the lack of personal jurisdiction). If the Court does not find the Defendant waived personal jurisdiction by moving for Summary Judgment, Plaintiffs ask for the opportunity to conduct limited discovery regarding Defendant's contacts with Maryland.

    B.  <u>An Applicable State Rule or Statute Confers Personal Jurisdiction</u>.

The Maryland Long Arm Statute states:

In general

    (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

Business transactions or injuries in State

    (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

        (1) Transacts any business or performs any character of work or service in the State;

        (2) Contracts to supply goods, food, services, or manufactured products in the State;

        (3) **Causes tortious injury in the State by an act or omission in the State;**

        (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;…

MD. CODE ANN., CTS. & JUD. PROC. § 6-103. (Emphasis added.). "Maryland's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Mohamed v. Michael,* 370 A.2d 551, 553 (Md. 1977). The United States Court of Appeals for the Fourth Circuit has developed a three-prong test for specific jurisdiction in which the Court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those

activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002)). The Fourth Circuit cautions courts to examine the quality and nature of the contacts rather than "merely ... count the contacts and quantitatively compare this case to other preceding cases." *Carefirst of Md. V. Carefirst Pregnancy,* 334 F.3d 390, 397 (4th Cir. 2003) quoting *Nichols v. G.D. Searle & Co.,* 783 F.Supp. 233, 238 (D. Md. 1992)). When claims arise out of a single contact, that single contact may create jurisdiction if exercising jurisdiction would not offend "fair play and substantial justice." *Id.* (citing *Nichols*, 783 F.Supp. at 238).

"A state has a special interest in exercising jurisdiction over those who have committed tortious acts within the state." *Data Disc., Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977). In his motion to dismiss, the Defendant specifically refers the Court to the fact that Mrs. Hart resides in Carroll County, Maryland and is affiliated with the Carroll County chapter of Moms for Liberty. Coupled with his posting of libelous comment, this is an acknowledgement by Defendant that he intended to harm Mrs. Hart's reputation in Maryland. Defendant admits that he researched Mrs. Hart, saw her X profile that revealed her connection to Carroll County, and saw she was a chapter chair for a Moms for Liberty Group. Para. 15, doc. 16-2. Defendant saw that the Carroll County group was involved in recent controversies related to erotic books in grade school libraries. *Id.* After making those connections, and seeing her comments about erotic books in libraries, he attacked her sexual reputation in her home state of Maryland.

Defendant would have the Court believe he can hide in Kentucky and not be subject to the jurisdictions where his words cause injury. That is simply not the state of the law. For example, in Florida, a nonresident defendant "commits the tortious act of defamation in Florida for purposes

3

of Florida's long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and accessed in Florida." *Internet Sols. Corp. v. Marshall*, 39 So.3d 1201, 1216 (Fla. 2010); *see also Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) (adopting standard set forth by the Florida Supreme Court). *Miller v. Gizmodo Media Group, LLC*, 383 F. Supp. 3d 1365, 1371 (S.D. Fla. 2019). The tort of defamation "is committed in the place where the defamatory material is published." *Catalyst Pharms., Inc. v. Fullerton*, No. 16-25365, 2017 WL 6558397, at *6 (S.D. Fla. Aug. 8, 2017), *aff'd* 748 F. App'x 944, 947 (11th Cir. 2018) (internal quotation marks and citations ***1372** omitted). Where the alleged defamatory statement is published on a website to readers worldwide, the pivotal issue is whether the information was "accessed, and thereby published, in Florida." *Id.* (dismissing amended complaint for lack of personal jurisdiction because complaint did not allege facts showing the statements were accessed in Florida); *see also Internet Sols. Corp.*, 39 So.3d at 1215. *Miller v. Gizmodo Media Group, LLC*, 383 F. Supp. 3d 1365, 1371–72 (S.D. Fla. 2019).

> C. The Defendant Acted Purposefully and Committed an Intentional Tort; Personal Jurisdiction Accords with Constitutional Principles of Due Process.

The facts in the record establish Defendant's purposeful conduct in Maryland in the context of an intentional tort. Therefore, the test for jurisdiction differs from that cited by Defendant and is more favorable to Plaintiffs. In intentional tort cases, courts assess the purposeful availment prong of personal jurisdiction using two independent inquiries: the effects test, *Calder v. Jones*, 465 U.S. 783, 789 (1984), and the traditional minimum contacts test, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–80 (1984). *Accord Louis Vuitton Malletier, S.A.*, 736 F.3d 1339, 1356–57 (11th Cir. 2013); *Miller v. Gizmodo Media Group, LLC*, 383 F. Supp. 3d 1365, 1373 (S.D. Fla. 2019). Purposeful availment analysis of personal jurisdiction "ensures that a defendant will not be

4

haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated contacts.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment when the tort was: (1) "intentional; (2) [ ] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1356 (internal quotation marks and citation omitted; alteration added). *Miller v. Gizmodo Media Group, LLC*, 383 F. Supp. 3d 1365, 1373 (S.D. Fla. 2019). In *Calder* for example, the Supreme Court explained that a California court could exercise jurisdiction over the National Enquirer, a Florida corporation, and two Florida journalists, for publishing an allegedly libelous article about a California resident where the plaintiff lived and worked in California. *See Calder,* 465 U.S. at 788. The "article was drawn from California sources." *Id.* The National Enquirer's largest circulation was in California. *Id.* at 790. "[T]he brunt of the harm, in terms of both [plaintiff's] emotional distress and the injury to her professional reputation," was in California. *Id.* at 789, (alteration added). The Supreme Court explained the defendants' actions were "expressly aimed at California" because they knew the "brunt of [the] injury" would be felt in that state. *See id.* at 789–90 (alteration added).

> We have typically treated "purposeful availment" somewhat differently in tort and contract cases. In tort cases, we typically inquire whether a defendant "purposefully direct[s] his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. *See Schwarzenegger [v. Fred Martin Motor Co.*, 374 F.3d 797, 803*]* (citing *Calder v. Jones,* 465 U.S. 783, 789-90 (1984)).

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). *See also AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) ("Where allegedly tortious conduct takes place outside the forum and has effects inside the forum, our circuit has examined purposeful direction using an 'effects test[.]'"); *Panavision Int'l, L.P. v.*

5

*Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) ("It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are 'purposefully directed' toward forum residents.").

This Court also has personal jurisdiction over the Defendant under the "minimum contacts" test.

> The Due Process Clause of the Fourteenth Amendment requires that a nonresident defendant have sufficient "minimum contacts" with the forum state so that notions of "fair play and substantial justice" are not offended. *Id*. (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under federal law, personal jurisdiction can be either general or specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Co.*, 137 S.Ct. 1773, 1776 (2017).
>
> . . . .
>
> A court has specific jurisdiction over a defendant "if the controversy is sufficiently related to or arose out of the defendant['s] contacts with the forum." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). In other words, specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action. *Lake [v. Lake]*, 817 F.2d 1416, 1421 (9th Cir. 1987). The Ninth Circuit analyzes specific jurisdiction by utilizing a three-part test: (i) the non-resident defendant must purposefully direct her activities or consummate some transaction with the forum or resident thereof, or perform some act by which she purposely avails herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (ii) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (iii) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Yahoo! Inc. [v. La Ligue Contre Le Racisme et L'Antisemitisme]*, 433 F.3d 1199, 1205-06 (9th Cir. 2006). The plaintiff has the burden of satisfying the first two prongs. *Lake*, 817 F.2d at 1421. If satisfied, the burden then shifts to the defendant to demonstrate unreasonableness. *Boschetto v. Hansing*, 539 F. 3d 1101, 1116 (9th Cir. 2008).

*Scofield v. Guillard*, 3:22-cv-00521-REP at 7-8 (D. Idaho Nov. 13, 2023)

Defendant contends that he does not meet the minimum contacts test for personal jurisdiction in Maryland. Yet, he admits to certain important facts. He admits that he has travelled to Maryland on *many* occasions. He admits that he has stayed in hotels in Maryland. He conducts commercial business in Maryland; he sells books of poetry in Maryland. Maryland

6

has an interest in torts committed against its citizens in Maryland. It is reasonable for the Defendant to defend himself before citizens of Maryland.

  D. <u>A Finding of Personal Jurisdiction is Reasonable</u>.

The Ninth Circuit delineates seven factors for a District Judge to use to evaluate reasonableness of personal jurisdiction: "(i) the extent of the defendant's purposeful interjection into the forum state's affairs; (ii) the burden on the defendant of defending in the forum; (iii) the extent of conflict with the sovereignty of the defendant's state; (iv) the forum state's interest in adjudicating the dispute; (v) the most efficient judicial resolution of the controversy; (vi) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (vii) the existence of an alternative forum." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) (citation omitted). A court must balance all seven factors, as no single factor is dispositive. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). *Scofield v. Guillard*, No. 3:22-CV-00521-REP, 2023 WL 7496739, at *8 (D. Idaho Nov. 13, 2023).

  E. <u>The Court May Authorize Limited Discovery</u>.

"If the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (modification in original) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992)); *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010). Even if the Court reasoned that the facts as established at this point are on balance a close call, the facts provide a sufficient foundation for permitting limited jurisdictional discovery.

  F. <u>Transfer is More Appropriate than Dismissal</u>.

7

If the Court is inclined to find it lacks personal jurisdiction over the Defendant, the proper remedy is to transfer the case to the Kentucky Federal Court. A court that lacks personal jurisdiction or venue over a defendant may transfer an action under 28 U.S.C. § 1406(a) if transfer serves the interests of justice. *See* 28 U.S.C. § 1406(a); *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962) (finding that section 1406(a) permitted transfer whether or not the transferor court had personal jurisdiction); *Porter v. Groat,* 840 F.2d 255, 258 (4th Cir. 1988) (adopting rule that section 1406(a) lets a court transfer a case "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district"); *See also*, *Cranford v. Tennessee Steel Haulers, Inc.*, No. CV ELH-17-2768, 2018 WL 3496428, at *1 (D. Md. July 20, 2018)(Courts in this district favor transfer over dismissal unless "plaintiff is harassing the defendants or acting in bad faith or forum shopping.")

### III. DEFAMATION

A. <u>Facts of the Defamation</u>.

Defendant proclaimed on a public forum that Mrs. Hart engaged in lesbian group sex. This is an assertion that the Plaintiff engages in homosexual acts, commits adultery, and does so in groups. It is an assertion that Andrew Hart, her husband, has been cuckolded by at least one other person, and perhaps more.

The Plaintiffs allege that Mrs. Hart is a mother of five young children and has been faithful to her husband her entire marriage. Mrs. Hart avers that she has not engaged in lesbian threesomes. The Plaintiffs find these statements offensive; they are defamatory as a matter of law.

Defendant does not label his defenses, but he teases the "innocent construction rule." This is not applicable. Whether a statement rises to the level of defamatory is a question of law for the Court. *Hosmane v. Seley-Radtke*, 227 Md. App. 11, 21, 132 A.3d 348, 354 (2016), *aff'd,* 450

8

Md. 468, 149 A.3d 573 (2016). The Maryland Code has long included a statute that renders this legal issue simple. Under Maryland law, since at least 1838, the allegations are defamatory *per se*. *Terry v. Bright,* 4 Md. 430, 1853 WL 3550, at *1 (1853) ("The purpose of the act of 1838, ch. 114, was to make all words spoken maliciously touching the character for chastity of an unmarried woman, slander per se, and prima facie actionable as slanderous words are now actionable at common law.") Maryland law is clear that false statements declaring a woman unchaste is slanderous: "Any word spoken falsely and maliciously and likely to injure a woman's character or reputation for chastity is slander." Md. Code Ann., Cts. & Jud. Proc. § 3-501. *See also Batson v. Shiflett,* 602 A.2d 1191 (Md. 1992)(A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt, or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person.)

To avoid the inevitable – admission of his tortious conduct – Defendant claims "context" that includes facts outside of the pleadings. For example, Defendant references newspaper articles and social media posts by Mrs. Hart. However, the articles, media posts, and musings of the Defendant offer no evidence of Mrs. Hart's licentiousness. Rather, it is the tactic of the heckler: impede the free speech of another by noise, the so-called "heckler's veto." The Defendant urges the Court to silence the Plaintiffs in the courtroom as he imposes a price of the Plaintiffs' free speech in a public dialogue. It works like this: because the Defendant believes his views to be superior to those of the Plaintiffs, he may impose a disincentive to the Plaintiffs' expression as a false, slanderous accusation of licentiousness in contravention of the Plaintiffs' marital vows and state law. This is a type of insult over injury.

But the Court need not consider the symmetry of Defendant's motive. For a motion to dismiss the Court is limited, with exceptions not here relevant to the four corners of the complaint.

9

*CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.,* 566 F.3d 150, 154 (4th Cir. 2009). Defendant's attempt to provide extraneous "context" must await the Court's rulings on motions in limine and a jury's verdict.

### B. This Court May Not Overrule State Law on Defamation.

Defendant argues that the legalization of sodomy negates the law of defamation. He intimates this Court hold that MD. CODE ANN., CTS. & JUD. PROC. § 3-501 is unconstitutional. This is not logical. Whether a behavior is legal, such as sexism, racism, or alcoholism, does not give license to all others that they may falsely accuse someone of engaging in the behavior.

The cases on which Defendant makes his argument do not support him. Defendant mischaracterizes *Amrak Productions, Inc. v. Morton*, 410 F.3d 69, 73 (1st Cir. 2005). The Court of Appeals did not hold that "identifying an individual as a homosexual is not defamatory per se under Massachusetts law." (Memo. p. 15). The Court of Appeals affirmed dismissal on far narrower grounds and the Court specifically stated that it was not reaching the issue of defamation per se. In the second case on which Defendant relies (*Yonaty v. Mincolla,* 97 A.D.3d 141 (N.Y. 3d Dep't 2012)), the Court does not say a false accusation of homosexuality can never be considered defamatory. Even if the Court had the power to do so, the facts of this case do not justify declaring Maryland statutes and common law unconstitutional.

Defendant presents himself as an activist in the arena of homosexual rights. That is his right under the U.S. Constitution. However, those activities do not give him the right to falsely accuse others of being engaged in lesbian threesomes. Although Defendant may not find that accusation offensive, many others in the public do. This is especially true of a married woman who has held herself out to the world as a heterosexual. Being called a lesbian while married to a man is like calling her a liar, cheat, and fraud. Defendant has accused Mrs. Hart of being

10

unfaithful toward her husband. That is enough to make his statements defamatory.

### C. Declaring Someone a Member of a Cult is a Statement of Fact.

Defendant wrote that one Plaintiff belongs to a cult. Multiple courts have claimed that accusing someone of being involved in a cult can be defamatory:

> Finally, and most importantly, a decision of the Seventh Circuit, which is binding on this court, holds that stating that one belongs to a cult can give rise to a claim of defamation. *Kennedy v. Children's Service Society of Wisconsin,* 17 F.3d 980, 984 (7th Cir. 1994) ("[I]t is clear that Gaunt's statements that the Kennedys were unsuitable parents because they belonged to a cult could give rise to a claim of defamation.").

*Dr. R.C. Samanta Roy Inst. of Sci. & Tech., Inc. v. Lee Enterprises, Inc.*, No. 05 C 0423, 2006 WL 3692361, at *4 (E.D. Wis. Aug. 2, 2006). The cases that hold otherwise are generally basing the ruling on the reluctance of the court to involve itself in religious matters. But that is not the context for this use of the term "cult." Defendant's use of the term "cult" was not in reference to a religious practice or belief. Rather, it implied a group action by married lesbian women cheating on their husbands. In this context, accusing Plaintiff of being in this cult could be viewed by a reasonable jury as defamatory.

### D. "Rhetorical Hyperbole" is Not a Basis to Dismiss.

A state law defamation claim is not actionable if the challenged statement was merely "rhetorical hyperbole," or "loose, figurative, or hyperbolic language." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 17, 21 (1990) (citation omitted). The "general tenor" of such rhetorical speech, together with the specific language used, "sufficiently negates any impression that the speaker is asserting actual facts," thus precluding a defamation claim. *Snyder v. Phelps*, 580 F.3d 206, 220 (4th Cir. 2009).

This rule protecting "rhetorical hyperbole" is applied in the context of speech that can be characterized as containing opinions. So, for example, had Defendant stated, "Mrs. Hart is an

11

idiot for thinking that sexually explicit gay books should be kept out of grade schools," his opinion on her intelligence ("is an idiot"), would be considered hyperbolic, despite her actual I.Q. By contrast, Defendant's statement that a Plaintiff engaged in lesbian group sex is true or false because it describes an act that either occurred or did not occur. There is only one truth. *United States v. Paylor*, No. 19-7861 at 17 (4th Cir. Dec. 15, 2023). Defendant does not, and cannot, have an "opinion" on the historical fact. Defendant made a false statement to inflict harm on Mrs. Hart's reputation and reduce her credibility among readers.

The complaint specifically alleges that Mrs. Hart is not a public figure for the law of defamation and, for this motion, that allegation must be accepted as true. The purpose of the "rhetorical hyperbole" idea established in *Milkovich* was to encourage debate regarding matters of public concern. The sexual practices of the Plaintiffs are not a matter of public concern. Letting a victim of malicious defamation recover damages in a case such as this will not affect the "imaginative expression" used in debates regarding matters of public concern. "False statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas, and they cause damage to an individual's reputation that cannot easily be repaired by counterspeech, however persuasive or effective." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988).

A review of the cases that find "rhetorical hyperbole" to protect a defendant's speech creates the parameters for this rule. In *Letter Carriers v. Austin*, 418 U.S. 264, 284-286 (1974) the Supreme Court used this rule when a union leader was accused of being a "traitor" and a "scab." In *Hustler, supra,* the Supreme Court held that the First Amendment protected a parody of the Rev. Jerry Falwell, a public figure, because the statements "could not reasonably have been interpreted as stating actual facts about the public figure involved." 485 U.S. at 50. Mrs. Hart

12

wasn't parodied; she was defamed. Defendant's accusations are demonstrably false. There is no hyperbole because hyperbole is exaggeration. Mrs. Hart didn't engage in a single act with anyone – much less a group of people – outside of her marriage that was remotely sexual or homosexual. Defendant's words were an ad hominem attack intended to hurt the Plaintiffs.

Defendant is way out of bounds in claiming that an accusation of a lesbian threesome is mere rhetorical hyperbole. The Supreme Court has been careful to protect the right of individuals to express their opinions but, by "opinion," the court refers to statements that fail to have a "provably false factual connotation." *Snyder*, 580 F.3d at 220 (citing *Milkovich*, 497 U.S. at 20). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City, N.C.,* 388 F.3d 440, 446 (4th Cir. 2004). "False factual assertions are not protected under the First Amendment..." *Bennett v. Hendrix*, 325 F.App'x. 727, 741 (11th Cir. 2009) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues." (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). "The dispositive question is [ ]whether a reasonable factfinder could conclude the challenged statements imply an assertion that 'is sufficiently factual to be susceptible of being proved true or false.' " *Id.* at 739 (quoting *Milkovich*, 497 U.S. at 21). Here, Plaintiffs alleged and expect to prove that Defendant's statements are demonstrably false.

The Supreme Court's focus on "opinion" versus "fact" is intended to further debate on matters of public concern. "The First Amendment recognizes no such thing as a "false" idea. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339 (1974)." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51 (1988). "Whether ... speech addresses a matter of public concern must be determined

13

by [the expression's] content, form, and context ... as revealed by the whole record." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 761 (1985). The sex life of Mrs. Hart is patently not a matter of public concern. It is not an "idea" that requires constitutional protection.

E. <u>Mrs. Hart is Not a Public Figure</u>.

Defendant includes selected statements about Mrs. Hart's background in his motion to dismiss. He then argues that Mrs. Hart is a "public figure" for the law of defamation. However, a motion to dismiss is not the vehicle through which to determine if Mrs. Hart meets the definition of a public figure. The complaint alleges that she is not a public figure and Defendant's affidavit may not be used to contradict that allegation. Regardless, her status as a public figure would not be dispositive of the motion to dismiss.

F. <u>Defamation on Social Media is the Same as Other Publication.</u>

Defendant argues that the law of defamation ought to be applied more loosely in social media posts as compared to other speech. Defendant likens social media to the lawless "Wild West." Yet, there is simply no legal basis for this argument. Social media platforms are the new town square. Debate on matters of public concern should be freely allowed in the social media platforms – but accusing someone of illicit sexual behavior, without a basis can still be considered defamatory (putting aside the fact that an *ad hominem* attack is considered the least meritorious tactic in debate and is considered fallacious). That Defendant typed his defamatory comments into a computer and hit the enter button, provides no more protection than if he stood in the public square and screamed his accusations with a bull horn. The only difference is the permanence of the Defendant's false and defamatory statement. *See* Jeffrey Rosen, *The Web Means the End of Forgetting*, N.Y. Times Magazine, July 21, 2010.

G. <u>The Complaint Alleges that the Defendant's Statements Relate to Mrs. Hart</u>.

On the one hand, Defendant argues that Mrs. Hart was the person he was responding to in his post (p. 8 of Memorandum, Doc. 6-1). But he then argues at p. 26 of his memorandum that he was not referring to Mrs. Hart. (See also Doc. 6-2, Declaration of Defendant). Defendant identifies a third party, Bridget Ziegler, not mentioned in the complaint, who he thinks had engaged in lesbian threesomes. Defendant uses a memorandum of law before the United States District Court to assert that Bridget Ziegler, a woman previously affiliated with Moms for Liberty, engaged in lesbian group sex.

These allegations in the motion to dismiss rely on facts outside the pleadings. The "facts" regarding another woman are not in the four corners of the Plaintiffs' complaint and are the subject of a motion to strike or exclude them, filed with this response. But they show the entitlement Defendant believes he enjoys to publicize private sexual conduct of others. And they show the immoral and schizophrenic purpose of the publicity: to intentionally stigmatize others by declaring them to be homosexual while simultaneously publishing poetry books on the virtues of homosexuality.

If this Court must address the allegations about the third person, the mention of the other woman makes the defamation worse. Including another makes the accusation more specific, and seemingly more credible to the uninformed reader. The Defendant's revised defamation is that Mrs. Hart engaged in homosexual liaisons with a known, named individual.

**IV.   PRIVACY TORTS**

A. <u>Plaintiffs' Privacy Was Given Unreasonable Publicity</u>.

Count II states a claim for the tort of invasion of privacy – unreasonable publicity given to private life.   This is a well-recognized tort explained in the Restatement (Second) of Torts, Sec.

652(d).

> § 652D. Publicity Given To Private Life
> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for unreasonable invasion of his privacy, if the matter publicized is of a kind which
> (a) Would be highly offensive to a reasonable person, and
> (b) Is not of legitimate concern to the public.

Maryland law adopts this description of this invasion of privacy tort. *Furman v. Sheppard*, 744 A.2d 583, 587 (Md. Ct. Spec. App. 2000) (citing *Klipa v. Bd. of Educ. of Anne Arundel Cnty.*, 460 A.2d 601, 607 (Md. Ct. Spec. App. 1983)). Two critical elements of an "unreasonable publicity given to private life" claim are (1) disclosure of a "private fact," and (2) the defendant made the private fact "public" in disclosing it. *See Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1118 (Md. Ct. Spec. App. 1986) (citations omitted); *Lindenmuth v. McCreer*, 165 A.3d 544, 556–57 (Md. Ct. Spec. App. 2017).

The sex life of Mrs. and Mr. Hart is a private fact. The fruit of that private fact is five children, but what the Plaintiffs do in the privacy of their bedroom remains private. There is no evidence adduced or suggested that they make their sex life public by posting pictures, videos, or written comments.

Defendant put Plaintiffs' sex life into public view by implication: the Plaintiffs' sex life contradicted their views on providing sexually explicit books to young children. Defendant lied about their sexual preference but whatever their preference, this was not a matter of legitimate concern to the public. Defendant's decision to comment on Plaintiffs' sex life was highly offensive to Plaintiffs as it would be to most. Defendant's comments were intended to impose the "heckler's veto" and to discourage the Plaintiffs' participation in being an American citizen.

Defendant contends that Count II must involve unreasonable publicity about facts that are true. Defendant gilds the lily by contending that truth is the *sine qua non* of this privacy tort

16

(Memo. p. 27). Yet, that is not what the Supreme Court of Maryland wrote and is not an element of the tort as it is expressed in the Restatement (Second) of Torts, Sec. 652D. Rather, this privacy tort can be found even when the allegations are true. Truth is not the *sine qua non* of this tort.

B. Count III States a Claim for Intrusion Upon Seclusion.

The Appellate Court of Maryland explained the privacy tort called "intrusion upon seclusion.":

> We have said that the "'tort of invasion of privacy is not just one tort, but encompasses four different types of invasion tied together under one title. One form of invasion is intrusion upon the seclusion of another.'" *McCauley v. Suls,* 123 Md. App. 179, 190, 716 A.2d 1129 (1998) (citations omitted). Intrusion upon seclusion has been defined as: "The intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard,* 130 Md.App. 67, 73, 744 A.2d 583 (2000). Intent is clearly required; "'[t]he tort cannot be committed by unintended conduct amounting merely to a lack of due care.'" *Bailer v. Erie Ins. Exchange,* 344 Md. 515, 527, 687 A.2d 1375 (1997) (citations omitted).

*Mitchell v. Baltimore Sun Co.*, 883 A.2d 1008, 1022 (Md. Ct. Spec. App. 2005). The Appellate Court does not require there to be a physical intrusion. Intrusion upon a person's private sex life is highly offensive to most. That Defendant did not enter the Plaintiffs' bedroom does not undermine this claim. Defendant intruded upon the privacy of Plaintiffs' sex life by bringing their sex life into the minds of his readers to undermine Mrs. Hart's credibility. The case cited by Defendant, *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 719 (4th Cir. 1991), does not stand for the proposition this tort requires a physical intrusion. Defendant has cited no case with facts like this case wherein the Court dismissed the complaint for failure to state a claim.

C. Count IV Properly States a Claim for False Light.

To present a prima facie case of defamation, the plaintiff must show that: (1) the defendant made a defamatory statement to a third person, (2) the statement was false, (3) the defendant was legally at fault in making the statement, and (4) the plaintiff suffered harm. *See Lindenmuth*, 165

17

A.3d at 552; *Mantegna v. Mosby*, No. 1228, Sept. Term, 2022, 2023 WL 6618413, at *5 (Md. App. Ct. Oct. 11, 2023).

Defendant argues there is no evidence he acted with actual malice. In the context of this case, actual malice only requires reckless indifference for the truth. The allegations are enough for the Court to find actual malice under this standard.

Defendant made the inflammatory statements designed to injure with *no* basis to believe that Mrs. Hart had ever done what he publicized that she did. He wasn't told this by anyone. He didn't infer it from witnessed behavior. He invented it to damage Mrs. Hart's reputation to win an argument. That is enough for a reasonable jury to find reckless indifference to the truth.

The main difference between defamation and false light is that defamation relates to reputational harm while false light invades the victim's privacy and causes emotional distress. Under the facts of this case, if the Court lets the case proceed on the defamation count, it should also allow the false light claim, Count IV, to move forward.

**CONCLUSION.**

The motion to dismiss must be denied. Defendant has submitted to this Court's jurisdiction by moving for summary judgment under FRCP 12(d) and 56. Under the effects test of personal jurisdiction applicable to intentional torts, this Court may exercise jurisdiction over Defendant. If the minimum contacts test for personal jurisdiction is applicable, the Defendant has minimum contacts. If the Court is doubtful as to minimum contacts, the Plaintiffs have the right to conduct discovery to learn more about Defendant's contacts with Maryland. If the Court determines that it lacks jurisdiction over Defendant, the case should not be dismissed – it should be transferred to the proper Kentucky Federal Court.

The defamation and privacy counts should not be dismissed. Defendant's statements

about Mrs. Hart are inexcusable. That Defendant is a proud homosexual does not give him license to accuse married, heterosexual women of engaging in adulterous, lesbian threesomes.

Defendant's contention that the internet is "freewheeling" may be true, but it is irrelevant as a defense to his intentional torts. People ought to be free to express opinions using whatever language, tone, rhetorical flourish they choose. But, as the Supreme Court wrote: "False statements of fact are particularly valueless." They do not come within the umbrella of the marketplace of ideas. Defendant could argue that Mrs. Hart's views on books in public schools are wrong. He may not accuse her of adultery to injure her reputation and damage her credibility.

Dated: January 26, 2024                              Respectfully Submitted,

/s/

Clarke F. Ahlers
(AIS# 8606010002)
Fed Ct. # 08577
Clarke F. Ahlers, P.C.
Atholton Square
10450 Shaker Drive, Suite 111
Columbia, Maryland 21046
Ph: 410-740-1444
Fax: 410-740-0048
Email: cahlers@aol.com
***Attorney for Plaintiffs***

**CERTIFICATE OF SERVICE**

I certify that on this 24th day of February 2024, a copy of the foregoing was sent through the CM/ECF system to the attorneys for the Defendant.

/s/

Clarke F. Ahlers, Esq.