## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **KATHRYN HART**, *et al.,* | | |
| | * | |
| *Plaintiffs,* | | |
| | * | |
| **v.** | | **Case No. 1:23-cv-03499-JRR** |
| | * | |
| **WILLIE EDWARD TAYLOR** | | |
| **CARVER,** | * | |
| | | |
| *Defendant.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendant Willie Edward Taylor Carver's Motion to Dismiss. (ECF No. 16; the "Motion to Dismiss.") The court also has before it Plaintiffs Kathryn Hart and Andrew Hart's "Motion to Strike (FRCP 12(f)) Defendant's Motion to Dismiss, or in the Alternative, to Strike or Exclude Matters Not in the Record from Defendant's Motion to Dismiss, or in the Alternative, to Convert the Motion into a Motion for Summary Judgment and Permit the Parties to Conduct Discovery (FRCP 12(d))." (ECF No. 18; the "Motion to Strike.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, Defendant's Motion to Dismiss is granted for lack of personal jurisdiction.

### I.    <u>BACKGROUND</u>

Plaintiffs are residents of Carroll County, Maryland. (ECF No. 1 ¶ 1.) Defendant is a resident of Kentucky and works at the University of Kentucky. *Id.* ¶ 2. The instant case arises from the following social media post by Defendant on X (formerly, Twitter) directed, according to the Complaint, to Plaintiffs Kathryn and Andrew Hart:

> Just because y'all wanna be in a cult doesn't mean we have to be in one with you. You can act like Puritan Martyrs [sic] to justify your unresolved shame about your secret lesbian threesomes. Just leave the rest of us out of it.

(ECF No. 1 ¶ 2.)

In response to this post, Plaintiffs initiated the instant action asserting three privacy torts and a claim for defamation: Defamation (Count I); Unreasonable Publicity Given to a Private Life (Count II); Intrusion Upon Seclusion (Count III); False Light (Count IV).  (ECF No. 1 at 1–4.) Plaintiffs allege Defendant's "tweet" contains four defamatory statements about Plaintiffs: (1) Plaintiffs engage in marital infidelity; (2) Plaintiffs are members of a cult; (3) Plaintiffs engage in sexual threesomes; and (4) Plaintiffs are gay.  *Id.* ¶ 3.  Plaintiffs allege the defamatory statements were "published to thousands of residents in Carroll County, Maryland and in other parts of Maryland, many of whom know, or know of, Mrs. and Mr. Hart."  *Id.* ¶ 4.   Plaintiffs allege that the defamatory statements have injured their reputations; constitute *per se* defamation; that Defendant knew the statements were false when made, or he recklessly disregarded the truth; and Defendant was negligent for not investigating the veracity of his statements before publishing them.  (ECF No. 1 ¶¶ 6, 7.)  For their alleged harms, Plaintiffs demand compensatory damages in excess of $75,000.00, punitive damages in excess of $75,000.00, "plus the costs of this suit."  *Id.* at 4.

Defendant moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Specifically, Defendant argues the Complaint fails to allege a basis for personal jurisdiction under Maryland's long-arm statute (as required), and that the court lacks personal jurisdiction over Defendants.  (ECF No. 16-1 at 2–3.)  In the alternative, Defendant argues per Rule 12(b)(6) that the Complaint fails to state a claim.  *Id.* at 12–23.  In response to the Motion to Dismiss, Plaintiffs filed their Motion to Strike, asserting that the Motion

to Dismiss must be struck because it contains factual allegations not in the Complaint; alternatively, Plaintiffs ask the court to convert the Motion to Dismiss into a motion for summary judgment pursuant to Rule 12(d), and (it seems) also to permit the parties to conduct discovery. (ECF No. 18 at 2.)

## II.   <u>LEGAL STANDARDS</u>

### <u>Federal Rule of Civil Procedure 12(b)(2)</u>

"A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party." *Arkansas Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 635–36 (D. Md. 2020) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "The jurisdictional question is 'one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.'" *Id.* (quoting *Combs*, 886 F.2d at 676).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* at 268. Importantly, "[i]n deciding whether the plaintiff has proved a *prima facie* case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993).

**Federal Rule of Civil Procedure 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Rule 12(f) motions are disfavored and 'generally will be not granted [for immateriality] unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party.'" *Fitchett v. Spartech, LLC*, 634 F. Supp. 3d 241, 243 (D. Md. 2022) (quoting *Gilman & Bedigian, LLC v. Sackett*, 337 F.R.D. 113, 117 (D. Md. 2020)). "Nevertheless, motions to strike will be granted when the movant meets its burden of proving that the challenged material is immaterial and prejudicial." *Id.* (citing *Chapman v. Duke Energy Carolinas, LLC*, Civ. No. 3:09-37RJC, 2009 WL 1652463, at *3 (W.D.N.C. June 11, 2009)).

### III.   ANALYSIS

#### A.   Plaintiffs' Motion to Strike (ECF No. 18)

Plaintiffs argue that the Motion to Dismiss "must be stricken *en toto*" because it contains factual allegations not in the Complaint. (ECF No. 18 at 2.) Rule 12(f) applies to pleadings, not papers. The Motion to Dismiss is not a pleading; it is a paper. The Motion to Strike is, therefore, denied. FED. R. CIV. P. 12(f); *Agbara v. Prince George's Cnty. Pub. Sch.*, No. TJS-20-0306, 2020 WL 7425298, at *11 (D. Md. Dec. 18, 2020) (denying motion to strike opposition briefs and affidavits because they are not pleadings), *aff'd*, No. 21-1029, 2022 WL 683362 (4th Cir. Mar. 8, 2022) (quoting FED. R. CIV. P. 12(f)); *Bracey v. Horry Cty. Council*, No. 4:17-399-RBH-TER, 2017 WL 5256895, at *2 (D.S.C. Nov. 13, 2017) ("Rule 12(f) motions apply to pleadings only and are not available to strike material contained in motions."); *Hardin v. Belmont Textile Mach. Co.*,

No. 3:05-CV-492-M, 2010 WL 2293406, at \*3 (W.D.N.C. June 7, 2010) ("Plaintiff's motion to strike is denied because it seeks to strike a filing other than a pleading.").

With regard to Plaintiffs' alternative request that the court construe the Motion to Dismiss as a motion for summary judgment per Rule 12(d) (and allow or direct the parties to engage in discovery), Plaintiffs misconstrue the operable rules.  Plaintiffs are correct that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).  And "[p]ursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion."  *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 U.S. Dist. LEXIS 130420, at \*8 (D. Md. Sept. 22, 2016) (citations omitted).   Importantly, however, on a Rule 12(b)(2) motion, as the court has before it, the court may consider "the complaint, motion papers, affidavits, and other supporting legal memoranda." *See Arkansas, supra.*  Because the court determines herein that it lacks personal jurisdiction over Defendant under Rule 12(b)(2), the court declines to reach the balance of the Motion to Dismiss.  Plaintiffs' alternative request that the court convert the Motion to Dismiss into a Rule 56 motion (per Rule 12(d)) is, therefore, denied.

### B.    Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 16)[1]

"The requirement that the court have personal jurisdiction . . . springs not from Article III of the Constitution, but from the Due Process Clause." *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d 124, 131 (4th Cir. 2019) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456

---

[1] Plaintiffs assertion that Defendant waived personal jurisdiction by filing his Motion to Dismiss is ill-conceived. (ECF No. 17 at 1-2.)  Defendant's Motion to Dismiss sets forth alternative 12(b)(2) and 12(b)(6) grounds.  As explained, on a 12(b)(2) motion, the court may consider "the complaint, motion papers, affidavits, and other supporting legal memoranda."   *See Arkansas, supra.*   The court therefore declines to find that Defendant waived personal jurisdiction.

U.S. 694, 702 (1982)).  "Because the personal jurisdiction requirement 'recognizes and protects an individual liberty interest, . . . the requirement may be waived by a defendant's 'express or implied consent to the personal jurisdiction of the court.'"  *Id.* (citing *Ins. Corp. of Ireland*, 456 U.S. at 703.)  "Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  *Id.* (quoting *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 228 (4th Cir. 2019)) (citations omitted).  The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of "specific" or "general" jurisdiction.  *Id.*

A court may assert general jurisdiction over a foreign defendant to hear any and all claims against him when his affiliations with the State are "so 'continuous and systematic' as to render [him] essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)).  Specific jurisdiction depends on an "'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Id.* (quoting von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)).

### 1.      Maryland Long-Arm Statute

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.  *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997).

In order for the court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's

long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). This court accepts as binding Maryland courts' interpretation with regard to the state's long-arm statute. *Mylan Labs.*, *Inc. v. Akzo, N.V.,* 2 F.3d 56, 61 (4th Cir. 1993). It is well settled in Maryland that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the United States Constitution. *Mohamed v. Michael*, 279 Md. 653, 657–58 (1977). Thus, this court's statutory and constitutional inquiry is merged for purposes of establishing personal jurisdiction. *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996).

Maryland's long-arm statute provides:

> **(a)** If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

> **(b)** A court may exercise personal jurisdiction over a person, who directly or by an agent:

>> **(1)** Transacts any business or performs any character of work or service in the State;

>> **(2)** Contracts to supply goods, food, services, or manufactured products in the State;

>> **(3)** Causes tortious injury in the State by an act or omission in the State;

>> **(4)** Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

>> **(5)** Has an interest in, uses, or possesses real property in the State; or

> **(6)** Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(a) and (b).

Maryland's long-arm statute requires Plaintiffs to identify the section of the long-arm statute on which they rely. *Id.* § 6-103(a); *see Ottenheimer Publishers, Inc. v. Playmore, Inc*., 158 F. Supp. 2d 649, 652 (D. Md. 2001) (explaining that "[i]t is nonetheless necessary first to identify a specific Maryland statutory provision authorizing jurisdiction . . . ."). This requirement can be met through a complaint or in opposition to a Rule 12(b)(2) motion. *Hausfeld v. Love Funding Corp*., 16 F. Supp. 3d 591, 597 (D. Md. 2014). In their opposition, Plaintiffs bold the text of section 6-103(b)(3) of the Maryland long-arm statute. (ECF No. 17 at 2.) Plaintiffs provide no argument as to why section 6-103(b)(3) applies to the instant case, and for reasons the court cannot discern, Plaintiffs direct the court's attention to Florida's long-arm statute and related common law. *Id.* at 3–4. That notwithstanding, the court will analyze section 6-103(b)(3) of the Maryland long-arm statute as apparently relied upon by Plaintiffs.

Defendant argues that because he made the social media post from outside of Maryland, section 6-103(b)(3) is inapplicable. (ECF No. 21 at 4.) The court agrees.

Under section 6-103(b)(3), "there must be (1) a tortious injury in Maryland that was (2) caused by an act or omission in Maryland." *Craig v. Gen. Finance Corp. of Ill.*, 504 F. Supp. 1033, 1036 (D. Md. 1980). "Courts have held that this subsection requires that both the tortious injury and the tortious act must have occurred in Maryland." *Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006); *see Zinz v. Evans & Mitchell Indus.*, 22 Md. App. 126, 130 (1974) ("The causal act is separated from the resulting injury. Both elements must be present before personal

jurisdiction will be inferred.").  Relevant here, "[i]t is well-established under Maryland law that the 'act' which gives rise to a cause of action in the context of defamation occurs where the defamation originated—not where any such statement happened to be read."  *Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 709–710 (D. Md. 2021); *see Winter v. Pinkins*, No. CIV. JKB-14-2125, 2014 WL 5500393, at *3 (D. Md. Oct. 29, 2014) ("Harmful speech occurs in the state where the speech originates."); *Baumgarten v. Belsky*, No. GJH-19-374, 2020 WL 3447753, at *3 (D. Md. June 24, 2020) ("Here, although the Complaint does allege that Defendant's false statements in the Facebook Group caused Plaintiff tortious injury in Maryland, it does not allege that Defendant's allegedly tortious acts occurred in Maryland."); *Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006) ("[T]here is no evidence that Defendant sent the e-mail in question from Maryland . . . . Because the tortious act did not occur in Maryland, the court does not have jurisdiction pursuant to subsection (b)(3)).

The Complaint alleges that Defendant lives and works in Kentucky.  (ECF No. 1 ¶ 2.) Further, Defendant attests he made the allegedly tortious post while in Kentucky, where he has lived since 2013.  (ECF No. 16-2 ¶¶ 2, 14.)  Plaintiffs neither allege nor argue that Defendant posted the statement while in Maryland.  Indeed, Plaintiffs do not allege any act or omission of Defendant occurred in Maryland.  *See Aphena Pharma Solutions-Md., LLC v. BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 317 (D. Md. 2012) (holding that "[a]lthough the results of [defendant's] alleged misrepresentations were felt in Maryland, [plaintiff] has not alleged, nor do the affidavits indicate, that [defendant] acted in Maryland. The only communications in the record that could give rise to such misrepresentations were phone calls or emails—the types of communications that *Zinz* held were not acts in Maryland"); *see also Zinz*, 22 Md. App. at 132 (declining to exercise personal jurisdiction where the alleged act was sending letters to Maryland).

Accordingly, the court lacks personal jurisdiction over Defendant under section 6-103(b)(3). *See Mikes Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 534 (D. Md. 2010) (granting motion to dismiss where the plaintiff failed to show any injury resulting from the defendant's "acts or omissions in Maryland"); *see Winter*, 2014 WL 5500393, at *3 (declining to find jurisdiction over the defendant under section 6-103(b)(3) where the "[p]laintiff has failed to argue, let alone make a *prima facie* showing, that [d]efendant's harmful speech originated in Maryland").[2]

Even if Defendant's alleged conduct satisfied Maryland's long-arm statute, as discussed below, the exercise of personal jurisdiction over Defendant would not comport with due process.

### 2.    Due Process Clause of the Fourteenth Amendment

Personal jurisdiction over a non-resident defendant is constitutionally permissible where the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted). In *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, the United States Court of Appeals for the Fourth Circuit Fourth Circuit explained:

> The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit. If those contacts form the basis for the suit, they may establish "specific jurisdiction." In determining whether specific jurisdiction exists, we consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of

[2] Plaintiffs do not rely on any other section of the Maryland long-arm statute and do not acknowledge Defendant's reference to, and analysis of, section 6-103(b)(4). Plaintiffs therefore would appear to concede that the court lacks personal jurisdiction over Defendant on any ground other than 6-103(b)(3). *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[s]" her claim where she failed to respond to argument).

those activities directed at the state; and (3) whether the exercise of
personal jurisdiction would be constitutionally "reasonable." *ALS
Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12
(4th Cir. 2002), *cert. denied*, 537 U.S. 1105, 123 S.Ct. 868, 154
L.Ed.2d 773 (2003); *see Helicopteros Nacionales de Colombia, S.A.
v. Hall*, 466 U.S. 408, 414 & n.8, 104 S.Ct. 1868, 80 L.Ed.2d 404
(1984). If, however, the defendant's contacts with the state are not
also the basis for the suit, then jurisdiction over the defendant must
arise from the defendant's general, more persistent, but unrelated
contacts with the state. To establish general jurisdiction, the
defendant's activities in the state must have been "continuous and
systematic." *ALS Scan*, 293 F.3d at 712; *see Helicop-teros*, 466 U.S.
at 414 & n. 9, 104 S.Ct. 1868.

334 F.3d 390, 397 (4th Cir. 2003). "[E]ven a single act" between a non-resident defendant and

the forum state may establish personal jurisdiction if it creates a "substantial connection" with the

state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985). Also relevant is whether

"the defendant's conduct and connection with the forum state are such that he should reasonably

anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 297 (1980).

Here, there is no basis to suggest that Defendant engaged in continuous and systematic

activities within Maryland, and Plaintiffs do not argue so. Therefore, the court's inquiry focuses

on Defendant's conduct giving rise to the suit. *See Carefirst, supra.* "Accordingly, it is only if

(1) [Defendant] purposefully availed [himself] of the privilege of conducting activities in

Maryland, (2) [Plaintiffs'] claims arise out of those activities, and (3) the exercise of personal

jurisdiction would be constitutionally 'reasonable', that [Defendant] can be subject to specific

jurisdiction in Maryland." *Carefirst*, 334 F.3d at 397. Plaintiffs appear to take the position that

the exercise of personal jurisdiction over Defendant comports with due process because Defendant

aimed his tortious conduct at the forum state (Maryland) by writing the alleged defamatory

statement on Plaintiff Kathryn Hart's X account, and Plaintiffs effectively received it and felt the alleged harm in Maryland, where they reside.  (ECF No. 17 at 3.)

*Harvey v. Cable News Network, Inc.,* provides guidance on whether specific jurisdiction may be exercised over an out-of-state individual who places information on the internet:

> In *ALS Scan*, the Fourth Circuit restated the test in the specific context of "electronic activity," holding that: "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714.

> Soon after its decision in *ALS Scan*, the Fourth Circuit had the opportunity to again consider the court's authority to exercise personal jurisdiction over an out-of-state person who places information on the internet in the context of an action for libel. In *Young v. New Haven Advocate*, a warden of a prison in Virginia brought suit against two Connecticut-based newspapers after each published articles regarding the conditions at prison where he was employed and housed prisoners from Connecticut. 315 F.3d 256, 259 (4th Cir. 2002). The newspapers were printed and distributed in Connecticut, and although one of the papers had eight mail subscribers in Virginia, neither paper solicited subscriptions from Virginia residents. *Id.* at 259-60. No journalists for either paper traveled to Virginia to work on the articles, though two of the reporters did engage in phone calls to Virginia residents during the reporting process. *Id.* at 260.

> The Fourth Circuit held that under such circumstances the district court in Virginia lacked specific jurisdiction over the Connecticut newspapers, relying heavily on the U.S. Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, a California actress brought suit in California against, among others, a reporter and an editor, both citizens of Florida, who wrote and edited in Florida a magazine article claiming that the actress had a problem with alcohol. *Calder*, 465 U.S. at 785, 104 S.Ct. 1482. The Supreme Court held that California had jurisdiction over the Florida residents because "California [was] the focal point both of the story and of the harm suffered." *Id.* at 789, 104 S.Ct. 1482. The Court continued, providing that the reporters' "actions were expressly aimed at California" and "they knew that

> the brunt of [the potentially devastating] injury would be felt by [the
> actress] in the State in which she lives and works and in which the
> [magazine] has its largest circulation." *Id.* at 789-90, 104 S.Ct. 1482.
> The same day the Supreme Court issued its decision in *Calder*, the
> Court also issued its decision in *Keeton v. Hustler Magazine*, in
> which the Court held that New Hampshire courts could exercise
> personal jurisdiction over a California publisher in a libel case
> brought by a New York plaintiff where the publisher sold "some 10
> to 15,000 magazine copies" in New Hampshire each month. 465
> U.S. 770, 772, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). The Court
> found that the magazine "continuously and deliberately exploited
> the New Hampshire market" and, therefore, could have "reasonably
> anticipate[d] being haled into court there in a libel action based on
> the contents of the magazine." *Id.* at 781, 104 S.Ct. 1473.

520 F. Supp. 3d 693, 711–12 (D. Md. 2021).

Plaintiffs must therefore demonstrate that Defendant "had the manifest intent to aim [his]
speech at a Maryland audience." *Id.* at 712 (citations omitted).  In concluding that the exercise of
jurisdiction would violate due process, the *Harvey* court reasoned that, although the individual
defendants' "statements may have been accessible online to Maryland residents, the individual
[d]efendants did not expressly aim their statements to the state, nor continuously and deliberately
exploit Maryland as some forum or market for their speech." *Id.* at 712.  This analysis militates
against the exercise of personal jurisdiction over Defendant.

*Dring v. Sullivan* is also instructive.  423 F. Supp. 2d 540 (D. Md. 2006).  There, the
defendant sent an email to three individuals in Maryland; and the email made clear that Defendant
knew the individuals resided in Maryland.  *Id.* at 548.  In addition, the plaintiff alleged facts to
show he felt the resultant injury in Maryland.  *Id.*  Although the plaintiff failed to allege facts to
satisfy the Maryland long-arm statute, the *Dring* court (like this court) examined whether the
defendant's contacts satisfied due process:

> In *Carefirst* and *ALS Scan*, the Fourth Circuit noted that the act "of
> placing information on the Internet is not sufficient by itself to
> subject that person to personal jurisdiction in each State in which the

information is accessed." *Carefirst*, 334 F.3d at 399 (quoting *ALS Scan*, 293 F.3d at 714) (internal quotation marks and brackets omitted). To subject a defendant to personal jurisdiction, the defendant "must have acted with the 'manifest intent' of targeting Marylanders." *Carefirst*, 334 F.3d at 400 (citing *Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir. 2002)).

Here, much of Defendant's e-mail is focused on Plaintiff's activities at the national and international level. The e-mail's emphasis is on the USAT elections, and there is no evidence that USAT has any connection to Maryland, other than having members in Maryland. Plaintiff himself admits that the e-mail was sent "in order to derail my efforts and the efforts of Mr. Pham in being elected to the USAT Board of Directors." Presumably Defendant could not choose which subscribers to the listserv would receive his message. It was either all or none. On the other hand, three of the individuals who are the subject of Defendant's e-mails—Plaintiff, Mr. Holloway, and Mr. Pham—are from Maryland. The e-mail makes it clear that Defendant knew these men all resided in Maryland and that they are involved in Maryland tae kwon do activities. At least three listserv recipients are from Maryland, or roughly four percent of the listserv membership. Plaintiff has alleged sufficient facts to show that he felt the injury here in Maryland.

423 F. Supp. 2d at 547–48.

Like Plaintiffs here, the *Dring* plaintiffs relied on *Calder v. Jones*. *Id.* at 548. In concluding

that the defendant's contacts did not satisfy due process, the *Dring* court noted that the facts before

it were materially distinguishable from *Calder*:

The facts in this case are distinguishable from *Calder*. The allegedly defamatory article in *Calder* concerned the California activities of the plaintiff and California was the focal point of the article. *Calder*, 465 U.S. at 788–89, 104 S.Ct. 1482. In addition, *Calder* involved a defendant who had an ongoing commercial relationship with California residents. Finally, the National Enquirer circulated more copies in California than in any other state. Here, Defendant is not a commercial actor and a significantly smaller number of recipients on the listserv are from Maryland.

With respect to the constitutional inquiry, Defendant's contacts do not satisfy due process. When the facts present even a close question, "[i]t would not be in the interests of the parties . . . to litigate this case in Maryland, only to have a ruling upholding the assertion of jurisdiction over [Defendant] reversed on appeal."

14

> *Coleman & Assocs.*, 887 F. Supp. at 120. Accordingly, the court finds that the proper course is either to dismiss this case so that Plaintiff may re-file in a more appropriate jurisdiction, or to transfer this case.

423 F. Supp. 3d at 548–49.

Here, Defendant's contacts do not satisfy due process.  That Defendant tweeted the offending statement on (or to) Plaintiff Kathryn Hart's account while she was in Maryland and that the statement was accessible to Maryland (and other) readers is plainly inadequate to satisfy due process for purposes of the exercise of personal jurisdiction.  Nothing in the Complaint (or other submission of Plaintiffs) suggests that Defendant expressly aimed his statement to Maryland, or continuously and deliberately targeted a Maryland readership.  Plaintiffs ask the court to infer that because Defendant attests that he "looked at [Kathryn Hart's] X profile," and, as Plaintiffs aver, her page reflects a Carrol County residence and affiliation, Defendant "acknowledge[es] . . . . that he intended to harm Mrs. Hart's reputation in Maryland."  (ECF No. 17 at 3; citing Carver Decl., ECF No. 16-2 ¶ 15.)  This is a bridge too far.  Defendant's declaration does not attest or reference any awareness of Plaintiffs' location or Maryland residence (at the time he made the post) – and, even if it did, this would be too flimsy a basis to form the requisite foundation of contacts and intention on which to pin due process for purposes of personal jurisdiction.

In sum, extension of personal jurisdiction over Defendant would not pass muster under due process.  *See Dring, supra*; *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. CV GLR-16-2974, 2017 WL 2778825, at *10 (D. Md. June 26, 2017) ("Sending three tweets and four emails related to the Podcasts and the Articles over a period of a year and a half are not so substantial that they amount to a surrogate for Smith and Walters's presence in Maryland.") (citations omitted); *Leather Masters (PVT), Ltd. v. Giampier Ltd.*, 836 F. Supp. 328, 331 (D. Md.

1993) ("Finally, the plaintiff points to the defendant's correspondence, telephone conversations, and telefax communications with plaintiff's agent, which is located in Maryland. However, without more, communications made from outside of the State to a Maryland resident are not enough to justify the exercise of personal jurisdiction over an out-of-state defendant.").

Because the court lacks personal jurisdiction over Defendant, the court will not address Defendant's alternative Rule 12(b)(6) arguments.

    **C.**    <u>**Jurisdictional Discovery**</u>

Plaintiffs assert that "[e]ven if the Court reasoned that the facts as established at this point are on balance a close call, the facts provide sufficient foundation for permitting limited jurisdictional discovery." (ECF No. 17 at 7.) Defendant counters that jurisdictional discovery is not warranted because "Plaintiffs offer no basis for discovery—*i.e.*, no specific reason to believe that [Defendant] had relevant contact with Maryland *relating to the publication at issue*, which are the only contacts that matter to the relevant analysis." (ECF No. 21 at 2.) (emphasis in original).

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). "At the same time, however, district courts have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Id.* (internal quotation marks omitted). "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition." *Id.* at 403 (citation omitted); *see Armstrong v. Nat'l Shipping Co.*, Civil Action No. ELH-13-03702, 2015 WL 751344, at *15 (D. Md. Feb. 20, 2015) (denying jurisdictional discovery where the defendant made "specific denials, under oath"

and the plaintiff offers only "speculation and conclusory assertions about [the defendant's] alleged contacts with Maryland").

Nothing before the court warrants jurisdictional discovery. The Complaint offers no toe hold about Defendant's possible contacts with Maryland and Plaintiffs' opposition make no proffer about "further facts that it could demonstrate that would be material to the limited jurisdictional ruling." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 706, 716 n.3 (4th Cir. 2002); *see also Baumgarten v. Belsky*, No. GJH-19-374, 2020 WL 3447753, at *3 (D. Md. June 24, 2020) ("Plaintiff has provided the Court with nothing beyond mere speculation that would suggest Defendant engages in a regular, persistent, or substantial course of conduct in Maryland, so the Court will deny jurisdictional discovery."); and *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition."). The court therefore declines to permit jurisdictional discovery.

### D. <u>Transfer</u>

In their opposition, Plaintiffs request transfer of the case to "the Kentucky Federal Court" if the court determines it lacks personal jurisdiction over Defendant. (ECF No. 17 at 8.) Defendant opposes, contending transfer is inappropriate "where plaintiffs could have reasonably foreseen when they brought their claims in Maryland that this Court would lack personal jurisdiction over the matter" and because the request is procedurally deficient (". . . there is no 'Kentucky Federal Court.'"). (ECF No. 21 at 5.)

17

Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, No. ELH-13-03702, 2015 WL 751344, at *15 (D. Md. Feb. 20, 2015) ("When a district court finds it lacks personal jurisdiction, it has discretion under 28 U.S.C. § 1406(a) to transfer the case to an appropriate jurisdiction."). "Section 1406(a) reflects a policy favoring adjudications on the merits over dismissals." *Fasolyak v. Cradle Society, Inc.*, No. AW-06-622, 2006 WL 8457066, at *6 (D. Md. June 15, 2006). "The [c]ourt's decision 'turn[s] on the particular facts of the case,' and 'all the relevant factors to determine whether . . . on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d 309, 319 (D. Md. 2012) (quoting *Byerson v. Equifax Info. Servs. LLC*, 467 F. Supp. 2d 627, 632 (E.D. Va. 2006) (internal quotation marks omitted). "The decision to transfer is 'committed to the discretion of the district court.'" *Id.* (quoting *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984)).

While the court appreciates that there is no "Kentucky Federal Court,"[3] Plaintiffs argue, and Defendant does not dispute, that jurisdiction is proper in Kentucky, as Defendant resides in Kentucky and made the alleged defamatory statement while in Kentucky. (Carver Decl., ECF No. 16-2 ¶¶ 2, 14.) Nothing suggests bad faith on the part of Plaintiffs in filing action in this court. *See Gov't of Egypt Procurement Off. v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 473 (D. Md.

---

[3] Relying on *Armstrong*, Defendant argues the court should deny the transfer request because "the request is procedurally deficient as well." (ECF No. 21 at 5) (citing *Armstrong*, 2015 WL 751344, at *16). In *Armstrong*, the plaintiff requested transfer "'to the proper jurisdiction'" if the court found it lacked lacks personal jurisdiction. *Armstrong*, 2015 WL 751344, at *15. The *Armstrong* court concluded it could not determine whether transfer would be appropriate because the plaintiff did "not specify the court to which he seeks to transfer." *Id.* at *16. While the court appreciates that Plaintiffs' requests lacks pinpoint specificity, the request is adequate.

2002) ("Courts generally favor transfer over dismissal, unless there is evidence that a case was brought in an improper venue in bad faith or to harass defendants[.]"); *Whittaker v. Winner*, 264 F. Supp. 2d 281, 282 (D. Md. 2003) (denying motion to transfer because "[i]t would be particularly against the interest of justice to transfer this action in light of the fact that not only did plaintiffs file the action in a clearly inappropriate forum but also sought to obtain a default judgment against some of the defendants here").  Accordingly, the court will exercise its discretion under § 1406(a) to transfer this action to the United States District Court for the Eastern District of Kentucky.[4]

## IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, Defendant's Motion to Dismiss (ECF No. 16) will be granted and Plaintiffs' Motion to Strike (ECF No. 18) will be denied.

/S/

_____
Julie R. Rubin
United States District Judge

September 3, 2024

---

[4] Defendant's county of residence is Lexington-Fayette, Kentucky, (ECF No. 1-1), which is a part of the Lexington Division of the Eastern District of Kentucky.  *See* Kentucky Local Rule 3.1(a)(2)(B).