UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

KATHRYN HART, *et al.*,     )
                            )
   Plaintiffs,              )    Civil No. 5:24-cv-00235-GFVT
                            )
v.                          )
                            )    **MEMORANDUM OPINION**
WILLIE EDWARD TAYLOR        )    **&**
CARVER, JR.,                )    **ORDER**
                            )
   Defendant.               )

\*\*\* \*\*\* \*\*\* \*\*\*

The Harts allege that Mr. Carver defamed them by publishing false statements about them on X. For the reasons that follow, Mr. Carver's Motion to Dismiss **[R. 43]** is **GRANTED IN PART** and **DENIED IN PART.**

**I**

Plaintiffs Kathryn and Andrew Hart are a married couple residing in Carroll County, Maryland. [R. 42 at 1.] The Harts assert that Defendant Carver, a Kentucky resident, defamed them on X (formerly known as Twitter) by falsely accusing them of infidelity, belonging to a cult, "engaging in sexual relations with three people at th[e] same time, and [] living a homosexual lifestyle." *Id.* at 2. The statement at issue was allegedly posted to Ms. Hart's X page by Defendant Carver. It reads as follows:

> Just because y'all wanna be in a cult doesn't mean we have to be in one with you. You can act like Puritan Martyrs [sic] to justify your unresolved shame about your secret lesbian sex threesomes. Just leave the rest of us out of it.

*Id.* Based on this tweet, the Harts bring claims for defamation and invasion of privacy.[1] *See generally id.* Now, Defendant Carver moves to dismiss the Amended Complaint for failure to state a claim.[2] [R. 43.]

## II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, a court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555).

As a threshold matter, Defendant Carver's Motion to Dismiss includes facts not alleged in the Amended Complaint, as well as various screenshots of social media postings. [*See* R. 43.]

---

[1] The Harts initially filed this suit in the United States District Court for the District of Maryland. [R. 1.] Carver moved to dismiss for lack of personal jurisdiction. The Court granted the request and transferred the action to the undersigned on September 3, 2024. [R. 24.]

[2] The Harts have additionally moved for the Court to consider their response brief, even though it was filed out of time. [R. 48.] Their counsel explains that, due to misunderstandings between co-counsel and medical problems suffered by both of plaintiff's attorneys, the filing deadline was overlooked. The Court will grant the request to accept the late filing, and therefore considers Plaintiffs' response brief.

The Harts correctly note that these materials are not properly considered on motion to dismiss review. *See Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791 (M.D. Tenn. 2018) ("As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Federal Rule of Civil Procedure 56."). Though the Court will not consider the miscellaneous social media postings, it will consider the screenshot of the allegedly tortious tweet because it is "incorporated into the complaint by reference and [] central to the plaintiff's claim." *Id.* at 792.

### A

Before reaching the merits of the Motion, the Court must determine which states' law applies. After an action is transferred pursuant to 28 U.S.C. § 1406(a), a federal court sitting in diversity applies the transferee court's choice of law rules. *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1084-85 (6th Cir. 1998). Because this action was transferred to the undersigned pursuant to § 1406(a), the Court applies Kentucky's choice of law rules. *Id.*

Kentucky's choice of law rules "depend[] upon the classification of a claim as either sounding in tort or in contract." *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 707 (W.D. Ky. 2013). In tort actions, "'*any* significant contact with Kentucky is sufficient to allow an application of Kentucky law.'" *Mem'l Hall Museum, Inc. v. Cunningham*, 455 F. Supp. 3d 347, 358 (W.D. Ky. 2020) (quoting *Reichwein v. Jackson Purchase Energy Corp.*, 397 S.W.3d 413, 416 (Ky. Ct. App. 2012)). Courts assessing whether there are sufficient contacts with Kentucky consider: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence or place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Petro v.*

*Jones*, No. CIV. 11-151-GFVT, 2013 WL 756756, at *8 (E.D. Ky. Feb. 27, 2013) (citing Restatement (Second) of Conflicts § 145).

Although the alleged injury was felt in Maryland, Defendant Carver swears that he posted the tweet from Kentucky. [R. 24 at 9.] Further, Mr. Carver is a Kentucky resident and employee of the University of Kentucky. [R. 42 at 1.] Admittedly, the fact that the tweet was transmitted over the internet complicates the inquiry into the place where the parties' relationship centers. Nevertheless, given Mr. Carver's residency and the fact that the tweet was sent from Kentucky, Kentucky's "provincial" choice-of-law tendencies counsel in favor of applying its law here. *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000).

**B**

Under Kentucky law, a defamation claim is "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281–82 (Ky. 2014), *as corrected* (Apr. 7, 2015). The Harts' Amended Complaint centers on the following tweet:

> Just because y'all wanna be in a cult doesn't mean we have to be in one with you. You can act like Puritan Martyrs [sic] to justify your unresolved shame about your secret lesbian sex threesomes. Just leave the rest of us out of it.

It is undisputed that the tweet was sent from Defendant Carver to Plaintiff Kathryn Hart on December 21, 2023. According to the Harts, this tweet contains the following defamatory characterizations of Mr. and Ms. Hart: (1) "marital infidelity;" (2) "belonging to a cult;" (3)

4

"engaging in sexual relations with three people at that same time;" and (4) "living a homosexual lifestyle." [R. 42 at 2.]

1

First, Defendant Carver asserts that his tweet is "rhetorical hyperbole" protected by the First Amendment. [R. 43 at 19.] The Harts disagree, contending that (1) the rhetorical hyperbole category is inapplicable here, (2) they are not public figures and (3) Carver's statement was one of fact, not opinion. [*See* R. 49.] They further note that allegations of adultery are defamatory per se under Kentucky law. *See* Ky. Rev. Stat. Ann. 411.040 ("An accusation of incest, fornication or adultery against any person shall be actionable. In such a case the plaintiff shall not be required to allege or prove special damage.")

a

As the Supreme Court of Kentucky has noted, the tension between First Amendment principles and reputation protection is at its apex "when there is a media defendant, the subject matter is one of public interest, or the plaintiff is a public official or a public figure." *Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302, 305 (Ky. 2010). Though a "purely private matter between private parties" does not "implicat[e] such weighty concerns . . . . the defendant's freedom of expression is still implicated, and the First Amendment still affords some, though less substantial, protections." *Id.* (quoting *Innes v. Howell Corp.*, 76 F.3d 702, 709 (6th Cir. 1996)). Carver's motion provides a variety of additional facts undergirding his argument that the Harts qualify as public figures within the meaning of Kentucky defamation law. However, these fact intensive arguments rely on extraneous information not provided in the Amended Complaint, and

are thus better suited for the summary judgment stage. For the purposes of this instant motion, the Court will accept the Amended Complaint's allegation that the Harts are not public figures.

**b**

"Separate from opinions, statements considered 'rhetorical hyperbole,' 'vigorous epithet,' and 'loose, figurative, or hyperbolic language' are provided constitutional protection." *Ramler v. Birkenhauer*, 684 S.W.3d 708, 720–21 (Ky. Ct. App. 2024). "Although the Supreme Court has refused to give blanket First Amendment protection for opinions, its precedents make clear that the First Amendment does protect 'statements that cannot reasonably be interpreted as stating actual facts about an individual.'" *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 597 (6th Cir. 2013) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *see Milkovich*, 497 U.S. at 20 ("[T]he *Bresler–Letter Carriers–Falwell* line of cases provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual. This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation.").

For instance, an allegation that public figures were "racist" and "sexist" was rhetorical hyperbole and therefore not actionable. *See Ramler*, 684 S.W.3d at 721; *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 792 (E.D. Ky. 2019) ("[T]hese statements contain terms such as 'ugly,' 'swarmed,' 'taunting,' 'disrespect,' 'ignored,' 'aggressive,' 'physicality,' and 'rambunctious.' These are all examples of 'loose, figurative,' 'rhetorical hyperbole' that is protected by the First Amendment because it is not 'susceptible of being proved true or false.'"); *Perez v. Weaver*, No. 6:22-CV-127-REW-HAI, 2022 WL 22863218, at *5 (E.D. Ky. Dec. 14, 2022), *R&R adopted*, No. 6:22-CV-127-REW, 2023 WL 11897158 (E.D. Ky. Apr. 21, 2023) ("As both a statement of opinion and as rhetorical and hyperbolic language, the caption 'Cop

6

Tries To Violate Civil Rights' constitutes 'protected' language and cannot be actionable as defamation.").

Further, in Kentucky, an opinion is "actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989) (quoting Restatement (Second) of Torts § 566 (1977)).[3] When determining whether a statement constitutes an opinion, "we construe the statements in the whole context of their publication." *Davenport Extreme Pools & Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 157 (Ky. Ct. App. 2024) (quoting *Yancey*, 786 S.W.2d at 857). "The bottom line is protected opinion exists if "[t]he reader is in as good a position as the author to judge whether the conclusion ... [i]s correct." *Loftus v. Nazari*, 21 F. Supp. 3d 849, 853 (E.D. Ky. 2014) (quoting *Lassiter v. Lassiter*, 456 F. Supp. 2d 876 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008)). Here, the Court has absolutely no information as to the context of the statement because the Amended Complaint provides none. To the extent that Ms. Hart's allegations of defamation hinge on the statement that she "wan[ts] to be in a cult," the Court finds that statement is protected as a statement of opinion and rhetorical hyperbole.

First, the statement is an opinion not susceptible of being proven true or false. The allegation that one *is* a member of a cult could constitute a factual statement. But the assertion that one wants to be in a cult (perhaps without even successfully achieving that objective) is so

---

[3]
> Pure opinion, which is absolutely privileged, occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based. In contrast, the mixed type 'is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication.

*Yancey*, 786 S.W.2d at 857.

7

divorced from the realm of fact that it is not legally actionable. *See Perez*, 2022 WL 22863218, at *5 ("[T]he statement that Weaver *tried* to violate Perez's civil rights is not provable as false. Again, a violation of civil rights is a statement of legal opinion. And the assertion that Weaver was *trying* (perhaps without even succeeding) brings the statement even further into the realm of pure opinion that is not provable as false."); *Loftus*, 21 F. Supp. 3d at 853 ("The bottom line is protected opinion exists if '[t]he reader is in as good a position as the author to judge whether the conclusion ... [i]s correct.'"). For similar reasons, the statement is "loose and figurative" and therefore qualifies as rhetorical hyperbole. Accordingly, the Harts' claims of defamation are dismissed to the extent they arise from the "wanna be in a cult" statement.

However, to the extent the defamation claim hinges on the allegation of "secret lesbian sex threesomes," that allegation is susceptible of being proven true or false. Moreover, it can be reasonably interpreted as stating actual facts about Ms. Hart's behavior. *See Milkovich*, 497 U.S. at 20 ("[T]he *Bresler–Letter Carriers–Falwell* line of cases provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual. This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation."). Accordingly, Mr. Carver's rhetorical hyperbole and opinion argument is unavailing as it pertains to that portion of the tweet.

### 2

Next, Defendant Carver asserts that, to the extent his tweet could be construed as alleging marital infidelity, it was not "of and concerning" either plaintiff. "When the defamatory statement does not name the defamed person, that person must prove that the article refers to himself." *E.W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 702 (Ky. Ct. App. 1978).

However, "[t]he plaintiff need not be specifically identified in the defamatory matter itself so long as it was so reasonably understood by plaintiffs 'friends and acquaintances . . . familiar with the incident.'" *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 793-94 (Ky. 2004) (internal citation omitted).

Plaintiffs appear to allege that Carver's tweet defamed both Mrs. Hart and Mr. Hart because it used the term "y'all." Certainly it's plausible that, because the tweet was directed at Ms. Hart and phrased in the second person, the tweet was about her. But the Harts' Amended Complaint provides no explanation as to why the tweet would also be referring to Ms. Hart's husband. They don't allege, for example, that Carver tagged Mr. Hart in the tweet. And because they don't explain the context surrounding the tweet, so far as the court is aware, the direct object "y'all" could refer to anyone with whom Ms. Hart associates.

Nonetheless, the plaintiffs contend that (even if the tweet made no mention of Mr. Hart) it defamed him by insinuating that his wife was unfaithful to him. This argument, while creative, is unavailing. Unlike other jurisdictions, the Court sees no evidence that Kentucky courts have adopted the doctrine of "defamation by implication." *Cf. Hieber v. Oakland Cnty.*, 136 F.4th 308, 326 (6th Cir. 2025) ("Michigan recognizes 'defamation by implication,' which allows defamation claims 'based not on what is affirmatively stated, but on what is implied when a defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts.'") (internal citation omitted). Thus, the unsupported assertion that Mr. Carver defamed an unmentioned third party by implication and without mentioning him directly is too attenuated and speculative to survive a 12(b)(6) challenge under Kentucky defamation law. Accordingly, the Court agrees that the plaintiffs have not

9

alleged the statement is "of and concerning" Mr. Hart, and it will dismiss Mr. Hart's defamation claim in its entirety.[4]

### 3

Finally, Defendant Carver urges that an accusation of homosexuality can no longer reasonably be considered defamatory within the parameters of contemporary cultural norms. [R. 43 at 22.] For the purposes of this case, the court need not decide whether an accusation of homosexuality would tend to "bring a person into public hatred, contempt or ridicule; cause him to be shunned or avoided; or injure him in his business or occupation." *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 749 (W.D. Ky. 2006) (quoting *McCall v. Courier–Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981)). Here, the statement about "secret lesbian sex threesomes" could plausibly be construed as a statement that Ms. Hart has engaged in adultery. Because an allegation of adultery is defamatory *per se*, Ms. Hart's defamation claim based on the "secret lesbian sex threesome" statement survives a motion to dismiss. *See* Ky. Rev. Stat. Ann. 411.040 ("An accusation of incest, fornication or adultery against any person shall be actionable. In such a case the plaintiff shall not be required to allege or prove special damage."). Thus, Mr. Carver's additional argument about contemporary cultural mores is moot. Based on the foregoing, Mr. Hart's defamation claim is dismissed in its entirety, whereas Ms. Hart's defamation claim survives only to the extent it concerns the "secret lesbian sex threesomes" statement.

---

[4] The Court will further dismiss Mr. Hart's tort claims for the same reason.

C

Finally, Defendant Carver seeks dismissal of the Harts' various invasion of privacy torts. [R. 43 at 23.] The Supreme Court of Kentucky has adopted the invasions of privacy section of the Restatement (Second) of Torts, which provides as follows:

> (2) The right of privacy is invaded by
> 
> > (a) unreasonable intrusion upon the seclusion of another...; or
> > 
> > (b) appropriation of the other's name or likeness ...; or
> > 
> > (c) unreasonable publicity given to the other's private life ..., or
> > 
> > (d) publicity that unreasonably places the other in a false light before the public ....

*McCall*, 623 S.W.2d at 887 (quoting Restatement (Second) of Torts § 652A). "One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other." *Id.* The Harts bring claims for unreasonable publicity, intrusion upon seclusion, and false light.

1

First, Defendant Carver asserts that the Harts fail to state a claim for the tort of unreasonable publicity. "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652D (2024); *see McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 820 (E.D. Ky. 2019) ("Kentucky . . . appear[s] to follow the Restatement (Second) of Torts on the discrete tort of unreasonable publicity."). It is axiomatic that unreasonable publicity "provides for tort liability involving a judgment for damages for publicity given to *true* statements of fact." Restatement (Second) of Torts § 652D

11

(2024) (emphasis added). Because the Complaint alleges unequivocally that the purportedly defamatory statement was false, the Harts fail to allege unreasonable publicity. Accordingly, the Court will dismiss that claim.

2

Next, Mr. Carver seeks dismissal of the Harts' claim for intrusion upon seclusion. "[T]he [Kentucky Supreme] court incorporated the Restatement's rule concerning Intrusion upon Seclusion, § 652B: '[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Pearce v. Whitenack*, 440 S.W.3d 392, 400-01 (Ky. Ct. App. 2014) (quoting § 652B and citing *McCall*, 623 S.W.2d at 887). "[T]o prevail on a claim for intrusion upon seclusion, a plaintiff must show "(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is highly offensive to a reasonable person." *Wells v. Craig & Landreth Cars, Inc.*, No. 3:10-CV-376, 2012 WL 6487392, at *5 (W.D. Ky. Dec. 13, 2012) (quoting *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003)); *see Pearce*, 440 S.W.3d at 400-01.

Mr. Carver queries how the Harts could satisfy the tort's first element when they have failed to allege a form of intrusion (physical or otherwise) separate from a publication. [R. 43 at 25.] The Restatement outlines the contours of an intentional intrusion contemplated by the tort:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other

12

> form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

Restatement (Second) of Torts § 652B, cmt. b (2024); *see also McKenzie*, 369 F. Supp. 3d at 819 (taking an "affirmative action" to "gather" plaintiffs' personal tax information amounted to an intrusion within the meaning of the Restatement). These commonsense examples compel the conclusion that no invasion occurred here. Plaintiffs allege simply that Mr. Carver published a defamatory statement about them on X. Though it's certainly possible to commit a tortious intrusion via the internet, the Harts fail to allege that such a thing occurred in this case. Because the Amended Complaint fails to cite an intrusion within the meaning of the tort, the Court will dismiss the Harts' intrusion upon seclusion claim.

### 3

Finally, Mr. Carver seeks dismissal of the Harts' claims for the tort of false light. [R. 43 at 25.] "An action for defamation and an action for invasion of privacy (false light) are closely allied. An injured party may seek relief through both causes of action, arising out of the same publication, but he is limited to only one recovery." *McCall*, 623 S.W.2d at 888–89. "To prevail on a claim of placing the plaintiff in a false light before the public, the plaintiff must show: '(1) the false light in which the other was placed would be highly offensive to a reasonable person; and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed.'" *Hays v. Clear Channel Commc'ns, Inc.*, No. 2005-CA-001490-MR, 2006 WL 3109132, at *5 (Ky. Ct. App. Nov. 3, 2006) (quoting *McCall*, 623 S.W.2d at 888). Moreover, "[t]he requirement that the plaintiff be

13

placed in a false light necessarily requires that the defendant alleged or implied facts about the plaintiff which are not true." *Id.*

> The purpose of a false light action is to protect the individual in not being made to appear before the public in an unreasonably objectionable false light and otherwise than as he is. To sustain this action, the person need not be defamed. It is sufficient that the publicity attribute to him characteristics, conduct or beliefs that are false, and that he is placed before the public in a false position.

*McCall*, 623 S.W.2d at 888 n.9. According to Defendant Carver, the Harts fail to allege that he acted with knowledge or with a "high degree of awareness of ... [the] probable falsity" of the statement. *Ball v. E.W. Scripps Co.*, 801 S.W.2d 684, 689 (Ky. 1990). Though Carver acknowledges that the Amended Complaint alleges intent, he nevertheless asserts that an "obvious alternative explanation" exists with respect to the element of intent. However, Carver's motion fails to explain what that obvious alternative explanation is. This conclusory argument is not a basis to dismiss Ms. Harts' claim for false light.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Carver's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**;

2. Plaintiffs' Motion to Accept Late Filing **[R. 48]** is **GRANTED**;

3. Mr. Hart's defamation claim is **DISMISSED**;

4. The Harts' claim for unreasonable publicity is **DISMISSED**;

5. The Harts' claim for intrusion upon seclusion is **DISMISSED**; and

6. Mr. Hart's claim for false light is **DISMISSED.**

This the 11th day of September, 2025.

Gregory F. Van Tatenhove
United States District Judge